JAMES R. PARKEY AND SALLIE T. PARKEY, PETITIONERS, *v.* COMMIS-
SIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 24829, 32620, 32621.   Promulgated May 9, 1929.

*Robert Ash, Esq.,* for the petitioners.
*L. A. Luce, Esq.,* for the respondent.

OPINION.

MILLIKEN: Counsel for the respective parties stipulated that the only question before the Board in these proceedings is the proper method of taxing certain monies received by the petitioners as con-

sideration for the execution of certain agreements designated and commonly known in Texas as "oil and gas leases" on certain portions of the land above referred to. Petitioner James R. Parkey contends that respondent erred in not according him the benefit of section 206 of the Revenue Act of 1921 and section 208 of the Revenue Act of 1924. These sections in part provide for the taxation of gains arising from "the sale or exchange of capital assets consummated after December 31, 1921." Section 206 (a) (6) of the Revenue Act of 1921 provides:

(6) The term "capital assets" as used in this section means property acquired and held by the taxpayer for profit or investment for more than two years (whether or not connected with his trade or business), but does not include property held for the personal use or consumption of the taxpayer or his family, or stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year.

Section 208 (a) (8) of the Revenue Act of 1924 reads:

(8) The term "capital assets" means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business.

The question presented is whether the oil and gas leases executed by petitioners constitute sales of "capital assets" as defined in the sections quoted. Petitioner James R. Parkey contends that under the law of Texas an oil and gas lease "not only conveys the oil and gas in place but also conveys an interest in the realty itself." In support of this contention he cites *Texas Co.* v. *Daugherty*, 107 Tex. 226; 176 S. W. 717, and *Stephens County* v. *Mid-Kansas Oil & Gas Co.*, 113 Tex. 160; 254 S. W. 290. He further contends that in applying section 206 of the Revenue Act of 1921 and section 208 of the Revenue Act of 1924 we should be governed by the state law. This same question was presented and the same argument advanced in *Henry L. Berg et al.*, 6 B. T. A. 1287. We there held that for Federal income-tax purposes the usual oil and gas lease did not constitute a sale of oil and gas in place, that this was true irrespective of the law of the State where the oil and gas were produced; that the proceeds of the oil and gas constitute rentals, and therefore gross income; and that such a lease did not constitute a sale of capital assets within the meaning of section 206 of the Revenue Act of 1921. There is no material difference between the provisions of section 206 of the Revenue Act of 1921 and section 208 of the Revenue Act of 1924 in so far as these sections are applicable to the question before us. We based our opinion in the

*Berg* case on *Stratton's Independence* v. *Howbert*, 231 U. S. 399; *Stanton* v. *Baltic Mining Co.*, 240 U. S. 103; *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503; and *United States* v. *Biwabik Mining Co.*, 247 U. S. 116. It is not necessary again to review these cases, except to point out that they hold that for Federal income-tax purposes an ordinary mineral lease does not constitute a sale of mineral in place and that the proceeds of the minerals going to the lessor are rents.

Subsequent to our decision in the *Berg* case, the United States District Court for the Eastern District of Pennsylvania rendered its decision in *Rosenberger* v. *McCaughn*, 20 Fed. (2d) 139. The facts in that case were that one Weiss, who was the owner of coal lands in Pennsylvania, in the year 1889 entered into a coal lease covering the lands upon a monthly rental reckoned on coal raised and the price realized at the breaker. The questions presented were whether this contract resulted in a sale, as of the date of the lease, of all the coal in place, in which case any gain from the sale was not taxable, since the sale was made prior to March 1, 1913; or whether the proceeds of the sale constituted rents, in which case they were taxable as gross income. The court, after pointing out that it was the established law laid down by the courts of Pennsylvania that such a contract resulted in a sale of the coal in place, and after the reference to the decisions of the Supreme Court which we cited in the *Berg* case, said:

* * * The conclusion reached is that the courts of the United States do not accept the Pennsylvania view of "so-called mining leases," and that, in the construction of a tax law of the United States, the law of the state in which the land is situate need not be . followed, and that "so-called royalties" are income.

This decision was affirmed by the Circuit Court of Appeals for the Third Circuit in *Rosenberger* v. *McCaughn*, 25 Fed. (2d) 699, and certiorari was denied by the Supreme Court, 278 U. S. 604. In their opinion the Circuit Court of Appeals said:

It is established beyond question that the law of the state in which property is situated governs federal courts in many things; in descent, alienation and transfer and the effect and construction of wills (*De Vaughn* v. *Hutchinson*, 165 U. S. 566, 17 S. Ct., 461, 41 L. Ed. 827) ; but whether it governs the federal government in the performance of its sovereign power to levy taxes is another question, and is the precise question here.

True, state decisions sometimes control federal legislation, for instance, in determining a deduction allowed by the federal estate tax, but that is because of the express provision—or permission—of the federal act which authorizes deduction of such charges as "are allowed by the laws of the jurisdiction * * * under which the estate is being administered." *Lederer* v. *Northern Trust Co.* (C. C. A.) 262 F. 52. But whether the federal government is limited in its selection of subjects for taxation by rules of state courts in respect to property within the state's jurisdiction is another matter and it is one on which the Supreme Court in *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503, 518 37 S. Ct. 201, 61 L. Ed. 460, did not feel called upon to pass, although the ques-

tion there, like the one here, was whether royalties or rents were income, and the mere following of the state rule would have been an easy way to decide the question. In that case a Minnesota con'ract of "lease" substantially like the Pennsylvania contract of "sale" in this case was under consideration. That contract of lease, as the Supreme Court noted, was of a class adjudged by the courts of Minnesota and other states to be a lease as distinguished from the opposite holding by Pennsylvania courts that it is a sale. After quoting the reasoning of Minnesota courts on such instruments, the Supreme Court said in respect to its duty to follow the state rule:

"These conclusions of the Supreme Court of Minnesota are not only made concerning contracts in that state, such as are here involved, but are supported by many authorities. Ordinarily, and *as between private parties*, there is no question of the duty of the federal court to follow these decisions of the Minnesota Supreme Court, as a rule of real property long established by state decisions. * * * Whether in considering this federal statute we should be constrained to follow the established law of the state, as is contended by the government, we do not need to determine. The decisive question in this case is whether the payments made as so-called royalties amount to income so as to bring such payments within the scope of the Corporation Tax Act of 1909 [36 Stat. 112]."

Such being the question, the Supreme Court itself construed the instrument there in question in order to determine whether the payments that were made under it were proceeds of sale, capital or income. Wholly aside from the construction which the Minnesota courts had placed upon instruments of that kind and solely because of the nature of the payments themselves, the Supreme Court, as we read its opinion, held that the instrument there in question did not effect a sale of the property, that is, of the ore in place (*United States* v. *Biwabik Mining Co.*, 247 U. S. 116, 126, 38 S. Ct. 462, 62 L. Ed. 1017), and that the moneys derived from mining and paid under the instrument were not converted capital, but were royalties or rents, and as such were income, proper to be included in measuring taxes under the applicable revenue act, within the rule of *Stratton's Independence* v. *Howbert*, 231 U. S. 399, 34 S. Ct. 136, 58 L. Ed. 285, and *Stanton* v. *Baltic Mining Co.*, 240 U. S. 103, 36 S. Ct. 278, 60 L. Ed. 546.

These cases fully bear out our decision in the *Berg* case. It is pertinent to point out that the Supreme Court of Texas to a large extent based their decisions in *Texas Co.* v. *Daugherty* and *Stephens County* v. *Mid-Kansas Oil & Gas Co.*, both *supra*, on Pennsylvania cases. The rule laid down in the *Rosenberger* case being true as to coal which is fixed in place, it is also true of oil and gas, which are of a fugacious nature.

In *John T. Burkett*, 7 B. T. A. 560, we were again confronted with the same question presented in the *Berg* case and with the same contention that the state law prevails. Following the *Berg* decision, we again held that an ordinary oil and gas lease did not convey title· to the oil and gas and that such a lease did not constitute a sale of a capital asset within the meaning of section 206 of the Revenue Act of 1921. It is pertinent to point out that the *Burkett* case resembles these proceedings in that in addition to the usual royalty there was

paid a cash consideration of $175,000. The Board's decision in this case was affirmed on March 20, 1929, by the Circuit Court of Appeals for the Eighth Circuit *sub nom. John T. Burkett* v. *Commissioner of Internal Revenue*, 31 Fed. (2d) 667. The court said:

\* \* \* The instrument recites that the owners "hereby lease, demise and let" the described land "with the exclusive right of drilling and operating thereon for and producing oil and gas therefrom \* \* \* and also such other privileges as are reasonably requisite for the conduct of said operations, and the right to remove casing from abortive and abandoned wells, and at the termination of this lease to remove all property placed thereon by lessee." The term was for "seven years from the date hereof, and as much longer thereafter as oil or gas \* \* \* are produced from said land. Provided that this lease shall not remain in force longer than fifty years from this date \* \* \*." There were provisions for drilling within stated periods or, failing such, for stipulated payments to the owner (as "rental") or for forfeiture. Other provisions covered royalties on oil or gas produced. $175,000 was paid as consideration for the instrument.

The gist of this instrument is that for a payment of $175,000, the oil company was given the right to prospect and produce oil for a maximum term of fifty years under the conditions and upon the payments set forth therein.

Whether this instrument can be described by any defined legal term—such as lease, license, etc.—it is certain that it is only a limited grant of a right in respect to land and for a limited period of time by one having the fee and possession. Such can not be denominated a sale in the ordinary sense of that word and there is no reason to construe Section 206 as using "sale" in any other sense. The wording and the legislative history of Section 206 are clear that it was intended to apply to "sales" in the sense of *conveyance of title to* property not of the *creation of privileges or estates or rights in property for a limited period of time.*

Also, this case is ruled by *United States* v. *Biwabik Mining Co.*, 247 U. S. 116, and *Von Baumbach* v. *Sargent Land Co.*, 242 U. S. 503. Both of those cases involved taxing statutes. Those cases defined this character of instruments as grants of privileges and not as conveyances of the mineral (iron ore) in place. We can not see why the character of the instrument is changed or affected by the fact that the mineral is of a character (oil and gas) which was not susceptible of conveyance in place. In either case, the same rights are given and the same results are intended and do follow. What the landowner *could* or *could not* grant does not control the nature of what he *did* grant.

It is clear under the above authorities that petitioner James R. Parkey is not entitled to the benefits of section 206 of the Revenue Act of 1921 and of section 208 of the Revenue Act of 1924.

Next the petitioner, James R. Parkey, contends in the alternative that if the oil and gas leases on his separate estate did not constitute sales of capital assets, then they were sales of personal property and as such would result in community income in the State of Texas. He makes this contention although it is evident from the record that he has at no time prior to the filing of his petitions herein asserted that these royalties constitute community income and that neither he nor his wife has returned them as community income. Cf. *Zemur-*

*ray* v. *United States*, 64 Ct. Cls. 657. In fact petitioner has stipulated in these proceedings:

The consideration received for executing "oil and gas leases" on land included in the "American Tribune New Colony Subdivision," "S. P. R. R. Survey," "H. & T. C. Survey No. 11," and "Day Land & Cattle Company Survey" is separate income to the petitioner, James R. Parkey * * *.

How in the face of this stipulation this petitioner can now claim that the royalties received from oil and gas produced from his separate property constitute community income is difficult of comprehension. However this may be, it is sufficient to point out that the Court of Civil Appeals of Texas has held in *Stephens* v. *Stephens*, 292 S. W. 290, that such royalties are not community property under Texas laws. The court said:

The land is separate property. The oil in place is realty capable of distinct ownership, severance, and sale. It is a part of the corpus of appellee's sole estate. He conveyed his oil and received, as the principal consideration therefor, one-eighth of the production. No skill, labor, or supervision of either of the spouses, and no community property was expended in the sale or production. The oil and the proceeds thereof received by appellee were neither rent nor profits, within the meaning of the law making such common property, but the consideration for separate realty. Extracting the oil from beneath the surface depletes and exhausts forever the corpus of his separate property; removing it to the top of the ground changes it from real to personal property; but such change or mutation, and the money received, are definitely traced, and, in our opinion, the fund in controversy belonged to appellee in his sole and separate right.

While the above decision is predicated upon a theory which is in conflict with the decisions of the Federal courts on the same question where it has arisen in Federal income-tax cases, nevertheless it is binding on us on the question whether such royalties do or do not constitute community property in Texas. What are the property rights of husband and wife arising from their marital relationship is peculiarly a state question and we are bound on such questions by the decisions of the state courts. Cf. *United States* v. *Robins*, 269 U. S. 315. It is immaterial that a state court in deciding a purely domestic question may advance views which a Federal court would not follow in deciding a purely Federal tax question. Cf. *Burk-Waggoner Oil Assn.* v. *Hopkins*, 269 U. S. 110. It is sufficient to say that a Federal income-tax statute can in no way create or modify a marital property right arising under a state law. The first alternative contention of the petitioner, James R. Parkey, must be denied.

Petitioner, James R. Parkey, advances as a second alternative, and petitioner, Sallie T. Parkey, states as her only ground for relief, that the "bonuses received should be considered as prepaid royalty."

There is nothing in any one of the petitions, nor in any one of the deficiency letters, nor in the agreed stipulation of facts, which shows how respondent treated such bonuses; neither are we informed by the pleadings nor by the stipulation what result would follow from a redetermination that such bonuses should be considered as prepaid royalties. The relief which petitioners are in fact seeking appears for the first time in the brief filed by their counsel in these proceedings, where he states:

If the Board does not look favorably upon the alternative relief set out as Question (2), we insist that the decisions in the *Nelson Land & Oil Company case;* 3 B. T. A. 315, and in the case of *Paul H. Hazlitt,* 10 B. T. A. 332, govern. By those decisions the law was firmly established that the bonuses received for executing the leases are prepaid royalties. Being prepaid royalties, the Board should rule that these petitioners are entitled to depletion deduction on account of the said royalties.

On the other hand, counsel for respondent thus states his views of the matter:

The contention of the petitioners that the sums derived from the leasing of the lands constitute a " bonus " or " prepaid royalty " and are therefore not taxable under Sections 210 & 211 of the respective Revenue Acts of 1921 and 1926, has been fully answered by the Board in *R. H. Hazlett, supra; Nelson Land & Oil Co.,* 3 B. T. A. 315, and the numerous decisions of the Board and the Federal Courts hereinabove cited under Issues (*a*) and (*b*).

If petitioners are seeking a deduction for depletion, they should have framed their pleadings so as to cover that issue and then they should have introduced evidence to sustain their allegations. They have done neither. We are not informed whether respondent denied a deduction for depletion in whole or in part, or whether he allowed ample depletion. We are not advised as to cost, value as of March 1, 1913, or discovery value. There are no facts in the record upon which a redetermination of depletion allowance, if granted, can be computed. The function of the Board is to find the facts and to apply the law to the facts found. It does not sit to decide bald questions of law. The Board has consistently refused to pass on questions of law where the facts are insufficient to permit it to dispose of the issues raised. *New England Trust Co., Trustee, etc.,* 13 B. T. A. 380; *B. Estes Vaughan,* 15 B. T. A. 596. This is true even though by stipulation the parties seek a decision of a pure question of law. *Ohio Clover Leaf Dairy Co.,* 8 B. T. A. 1249. In the absence of proper pleadings and of any evidence bearing on this contention, we are constrained to hold that there is nothing before us for decision.

Reviewed by the Board.

*Judgment will be entered for the respondent.*