M. T. STRAIGHT TRUST, FRANCIS L. McCREA, TRUSTEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43449. Filed April 25, 1955.

*Richard E. Williams, Esq.*, for the petitioner.
*Douglas L. Barnes, Esq.*, for the respondent.

70

FISHER, *Judge:* All of the facts were stipulated by the parties and are incorporated herein by this reference. Only those facts necessary to an understanding of the issue involved herein are set forth below.

By a trust conveyance dated December 31, 1945, Merton T. Straight transferred to two individual trustees three-fourths of his half interest in a partnership known as Adel Clay Products Company, Redfield, Iowa. The instrument provided in part that the trustees were to hold the property for the following purposes:

(b) To pay to the grantor's wife, Elizabeth S. Straight, during such period of time as she remains the wife, or widow, without remarrying, of the grantor, one-third of the annual net income of the trust property received from the partnership.

(c) To pay annually to the grantor's son, Frank W. Straight, during the period of this trust, that part of the net income of the trust property received from the partnership, but not in excess of one-third of such net income, which in the opinion of the Trustees is necessary for his education, comfort and support.

(d) To pay annually to the grantor's daughter, Julia C. Straight, during the period of this trust, that part of the net income of the trust property received from the partnership, but not in excess of one-third of such net income, which in the opinion of the Trustees is necessary for her education, comfort and support.

(e) If during the period of the trust either one of the grantor's children dies leaving heirs of his or her body surviving, to pay to such heirs of the body of the deceased child, share and share alike, such part of the net income of the trust property received from the partnership, but not exceeding one-third thereof, as the Trustees may deem necessary or proper for the support of such heirs.

(f) If during the period of the trust either one of the grantor's children dies without leaving heirs of his or her body surviving, to pay to the surviving child of the grantor at their discretion such additional part of the net income of the trust property received 'from the partnership as they would have paid to the deceased child if living.

(g) Upon the death of the grantor, and upon the expiration of the period during which Elizabeth S. Straight is entitled to income from the trust property, but in any event, not earlier than July 1, 1956, to transfer the trust property and all undistributed income to the two children of the grantor, Frank W. Straight and Julia C. Straight, share and share alike, the heirs of the body of a deceased child to take the deceased parent's share. It at the end of the trust period one of the grantor's said children has died without leaving heirs of the body, the share that such deceased child would have taken shall also be transferred to grantor's surviving child, and if at the end of the trust period both of grantor's said children have died without leaving heirs of the body, the trust property shall be transferred by the Trustees to the grantor's two sisters, Alma Straight Clark and Ina Straight Holtzman, share and share alike, and a deceased sister's share to be transferred to the heirs of the body of such deceased sister, share and share alike.

For each of the years 1946 through 1948, the trustees originally filed three fiduciary income tax returns, one in the name of each of three trusts entitled Elizabeth Straight Trust, Frank W. Straight Trust,

and Julia C. Straight Trust. Respondent subsequently determined that one trust existed, and in 1949 a return was filed by the trustees in the name of M. T. Straight Trust for the year 1946. The taxes theretofore paid in the names of the three trusts for that year were credited against the assessment against the M. T. Straight Trust for 1946. The net deficiency in the name of the M. T. Straight Trust for that year was paid by petitioner, and in 1952 it filed a claim for refund. Final action on that claim has been deferred pending the decision in the instant case.

On September 29, 1950, a single return was filed in the name of M. T. Straight Trust for each of the years 1947 and 1948, the years involved herein. Deficiencies in the taxes therein reported were subsequently determined by respondent, and on May 22, 1952, the notice of deficiency concerning these years was issued to petitioner. The petition and answer in the instant proceeding were filed during 1952. By notice of this Court dated July 14, 1953, the parties were advised that the case would be called on a circuit calendar in Des Moines, Iowa, beginning September 21, 1953.[1]

Subsequent to the notice setting the case for hearing, on August 13, 1953, a petition in equity was filed in the District Court of Iowa in and for Polk County by Merton T. Straight against the trustees and all the vested and contingent beneficiaries under his trust conveyance. The petition prayed in effect that the trust instrument be reformed to express the intentions of the grantor in the following particulars:

(a) The grantor intended to create three separate and distinct trusts, one for the benefit of his wife, Elizabeth S. Straight, one for the benefit of his son, Frank W. Straight, and one for the benefit of his daughter, Julia C. Straight.

(b) The grantor intended that the accumulated and undistributed income, if any, of the trust of Frank W. Straight should, in the event of his death, be paid to the estate of Frank W. Straight.

(c) The grantor intended that the accumulated and undistributed income, if any, of the trust of Julia C. Straight should, in the event of her death, be paid to the estate of Julia C. Straight.

(d) The grantor intended that in the event both Frank W. Straight and Julia C. Straight should die prior to the death of Elizabeth S. Straight and leave no descending heirs of the body surviving either of them, that in that event the income of the Frank W. Straight Trust and the Julia C. Straight Trust earned after the death of the survivor of them should be paid to Elizabeth S. Straight for the duration of her lifetime or until she should cease to be the wife or unmarried widow of the grantor.

---

[1] The hearing before the Tax Court was subsequently continued upon petitioner's motion and did not take place until September 20, 1954.

(e) The grantor intended that his sisters, Alma Straight Clark and Ina Straight Holtzman, and their heirs of the body should benefit from the three trusts, or any of them, only in the event that Frank W. Straight and Julia C. Straight should die without leaving descending heirs of the body and if Elizabeth S. Straight should die or should cease to be the wife or unmarried widow of the grantor.

The petition also stated that the Commissioner of Internal Revenue "has asserted and contends that the conveyance created but a single Trust."

A guardian *ad litem* was appointed by the Iowa District Court to represent the minor contingent beneficiaries and other children thereafter born and similarly situated. In his answers to the petition, the guardian alleged in effect that the wards would be damaged by that requested relief which is set out in paragraphs (b) through (e) above.

A hearing was held in the above matter on September 18, 1953, at which the grantor, the accountant who administered the accounts for the trustees, and one of the trustees testified. The guardian appeared at the hearing and cross-examined all witnesses. The next day a decree was entered in the proceeding which reformed the trust conveyance as prayed by the grantor. The decree thus reformed the original instrument into three instruments (attached thereto) creating three separate and distinct trusts which were thereby "adoped as the Trust originally created by said grantor, Merton T. Straight, nunc pro tunc."

Petitioner contends that the Government is bound by the *nunc pro tunc* decree which thereby reformed the trust conveyance as a consequence of an adversary proceeding after a hearing upon the merits. Petitioner accordingly concludes that there were three taxable entities rather than one during the years in question. Respondent, on the other hand, contends that the retroactive decree of the Iowa court in 1953 cannot affect the tax liability for the earlier years involved herein for two reasons: First, that the Iowa proceeding was not adversary or contested, but was a collusive action intended to affect income tax liability; and second, that the Iowa decree does not have a retroactive effect for tax purposes on the facts of the instant case.

In considering the first contention of respondent, it should be noted that in paragraph 16 of the stipulation of facts the parties stipulated and agreed that the decision of the Iowa District Court "shall and will be accorded the same authority for the purpose of this proceeding which it would have in the event said decision had been appealed to the Supreme Court of the State of Iowa and affirmed without opinion by that court." In *Thomas Flexible Coupling Co.*, 14 T. C. 802 (1950), affd. (C. A. 3, 1952) 198 F. 2d 350, we were called upon to decide whether a State court judgment which had been affirmed upon appeal to the Supreme Court of Pennsylvania was rendered in an adversary

proceeding. In deciding in the affirmative, we quoted with approval the statement of Judge Frank in *Kelly's Trust* v. *Commissioner* (C. A. 2, 1948), 168 F. 2d 198, reversing 8 T. C. 1269, in part as follows:

Whatever may have been the nature of the state-court suit in its inception, the appeal made it adversary, within the meaning of Freuler v. Helvering, 291 U. S. 35, 54 S. Ct. 308, 78 L. Ed. 634, and Blair v. Commissioner, 300 U. S. 5, 57 S. Ct. 330, 81 L. Ed. 465, especially as, on appeal from the state-court judgment, one judge dissented. The fact that the appeal was considered shows that the judgment was not by consent, for a consent judgment by its nature precludes an appeal.

Since respondent has stipulated and agreed that the Iowa decree in the instant case is to be accorded the same authority as though it had been appealed and affirmed, the determination of whether or not it was rendered in an adversary proceeding may be controlled by the principle of the *Thomas Company* case, *supra*. It is unnecessary for us to decide this issue, however, for, assuming *arguendo* that the decree was rendered in a contested and adversary proceeding, we hold, nevertheless, that it would not have a retroactive effect for tax purposes in the instant case for the reasons set forth below.

In *Sinopoulo* v. *Jones*, (C. A. 10, 1946) 154 F. 2d 648, holding that a *nunc pro tunc* reformation of a trust instrument by decree of a State court is not to be accorded retroactive recognition for tax purposes, the court said (p. 650):

The liability of appellant for the income tax chargeable to the income of the trusts for the years in question must be determined from the provisions of the trusts prior to their reformation by the state court. While the judgment of the state court made the reformation of the trusts retroactive and effective as of the date of the execution, this could not affect the rights of the government under its tax laws. It is a general rule that as between parties to an instrument a reformation relates back to the date of the instrument, but that as to third parties who have acquired rights under the instrument, the reformation is effective only from the date thereof.

In Loggie v. Thomas, 5 Cir., 152 F. 2d 636, it was held that a declaratory judgment of a state court rendered after federal income tax liability had accrued in a case in which neither the Collector nor the Commissioner was a party, was not res judicata in a suit in the federal court involving income tax liability and did not bind the government. Appellant's tax liability for the three years in question is to be determined from the provisions which he included in the declaration of trust which he executed, and not from what he intended to include therein.

See also *Erik Krag*, 8 T. C. 1091, 1098 (1947); *Morris Eisenberg*, 5 T. C. 856 (1945), affd. (C. A. 3, 1947) 161 F. 2d 506.

We think the issue here presented is not to be resolved on the basis of reasoning in cases involving the interpretation of instruments and the determination of property rights under applicable State law. In *Daine* v. *Commissioner*, (C. A. 2, 1948) 168 F. 2d 449, affirming 9 T. C. 47, the court said in this respect (p. 452):

It is one thing to look to state law to determine the meaning and effect of property titles or the incidents of an express trust created by will. It is quite another to regard a state judicial decree as having sufficient force of itself to make a revamped contract both effective and judicially approved as of a date over four years before its actual date in order that its maker may thus obtain the benefits of a just-enacted federal taxing statute. No sovereign is likely to permit its revenue imposts to be set at nought through such retroactive manipulation of state judicial proceedings.

See also *Peter Van Vlaanderen*, 10 T. C. 706, affd. (C. A. 3, 1949) 175 F. 2d 389.

There are numerous cases in which the construction or interpretation of an instrument by a decision of a State court involving the taxpayer and rendered subsequent to the taxable period involved has been relied upon to determine the tax consequences of the document. See *Blair* v. *Commissioner*, 300 U. S. 5 (1937); *Kelly's Trust* v. *Commissioner*, *supra; Eisenmenger* v. *Commissioner*, (C. A. 8, 1944) 145 F. 2d 103; *Thomas Flexible Coupling Co.*, *supra; Eva V. Townsend* 5 T. C. 1380 (1945); and *George N. Spiva*, 43 B. T. A. 1174 (1941). Similarly, there are many decisions which apply and follow for tax purpose decisions of State courts which determine the taxpayer's property rights, although rendered subsequent to the taxable period in issue. In this respect, see *Freuler* v. *Helvering*, 291 U. S. 35 (1934); *Estate of Julien W. Vose*, 20 T. C. 597 (1953); and *Estate of A. Bluestein*, 15 T. C. 770 (1950).

The decisions cited above are in no way inconsistent with our view in the instant case. Analysis of each of them reveals that an application of State law to the facts involved therein was necessary to determine the legal effect of certain instruments, transactions, or occurrences. After that legal effect was determined under local law, the tax consequence was a Federal question to be determined under the appropriate revenue statute. The applicable local law was held in each of the above cases to be that pronounced in a State court proceeding which involved the taxpayer, and that proceeding was thereby given a retroactive effect only in the sense that the local law pronounced therein was held applicable to taxable years which preceded it. In the instant case, however, the reformation decree is not a determination of the legal effect of the original trust instrument under local law, nor does it purport to be such a determination. On the contrary, it alters and modifies the instrument into three documents each of which creates a separate trust. Although this reformation may comply with the original intentions of the grantor as disclosed by his testimony and other evidence at the hearing in that proceeding, it is not an interpretation of the original instrument within the principles of the cases above cited. See *Morris Eisenberg*, *supra*, at p. 868. Petitioner concedes in its reply brief that the express terms of the original trust instrument created but a single trust. Moreover, it is our

view that the instrument is clear and unambiguous in this respect. We hold, therefore, that there was but one trust in existence for tax purposes during the years in question.

In contending that the reformation decree should be given retroactive effect, petitioner relies upon our decision in *Louise Savage Knapp Trust A*, 46 B. T. A. 846 (1942). That case has been generally cited for the proposition that we must follow a State court's decision concerning property rights which were litigated before it in a contested proceeding subsequent to the taxable year at issue. See *Estate of A. Bluestein, supra*, at p. 784; and *Eva V. Townsend, supra*, at p. 1387. The first issue decided in the case, however, concerned the effect of a New York reformation decree on the number of trusts in existence during a prior taxable year. We have carefully reviewed our opinion in the *Knapp Trust* case (which was decided prior to *Sinopoulo* v. *Jones*, *Erik Krag*, *Morris Eisenberg*, and *Daine* v. *Commissioner*, all *supra*) and have reached the conclusion that the case is in error with respect to the particular holding therein that a reformation decree is to be given retroactive effect for tax purposes. We therefore decline to follow it in the instant case. For the same reasons, we decline to follow a like holding in the earlier case of *Hugh D. Rhodes, et al., Administrators*, 41 B. T. A. 62 (1940), affd. (C. A. 8) 117 F. 2d 509.

Reviewed by the Court.

*Decision will be entered under Rule 50.*