OLGA B. RODERICK, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

DORRANCE D. RODERICK, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2190–69, 2191–69.   Filed October 18, 1971.

*Richard H. Feuille,* for the petitioners.
*Daniel A. Taylor, Jr.,* for the respondent.

FEATHERSTON, *Judge:* Respondent determined deficiencies in the Federal gift taxes of each petitioner for the calendar years 1965 and 1966 in the amounts of $5,400 and $5,499.65, respectively. Respondent has made concessions, and the only issue for decision is whether transfers made in 1965 and 1966 to trusts created for the benefit of petitioners' grandchildren were gifts of future interests or gifts of present interests within the meaning of section 2503(b) ; [1] resolution of this issue controls the determination of whether the gifts qualify for the $3,000 per donee annual exclusion allowed by section 2503(a).

### FINDINGS OF FACT

Petitioners Dorrance D. Roderick and Olga B. Roderick, husband and wife, were legal residents of El Paso, Tex., at the time they filed their petitions. They each filed Federal gift tax returns for the calendar years 1965 and 1966 with the district director of internal revenue, Austin, Tex. For convenience, when Dorrance D. Roderick alone is hereinafter mentioned, he will be referred to as Roderick.

In December 1955, petitioners created seven so-called Clifford trusts, one for the benefit of each of their seven grandchildren. Petitioners' attorney, Richard H. Feuille (hereinafter referred to as Feuille), prepared the trust indenture (hereinafter the 1955 trust) which set forth the terms of the trusts. The trust instrument provided that:

(b) During the continuance of the Trust, the Trustee shall deliver and pay over the entire "net income" of the Trust to the beneficiary in such monthly,

---

quarterly, semi-annual, annual or other convenient intervals as the Trustee shall deem convenient and feasible or the beneficiary may request.

To fund these trusts petitioners made gifts of stock. They timely filed gift tax returns for these gifts, claiming the $3,000 per donee annual gift tax exclusion. Upon audit of the returns by the respondent, he determined that the provisions of the 1955 trust directing the distribution of the income to the beneficiaries qualified the gifts for the $3,000 annual exclusion.

During July 1959, petitioners created four additional Clifford trusts, one for the benefit of each of their two children and their spouses. The trust indenture (hereinafter the 1959 trust) covering these four trusts contained the same provision as the 1955 trust for the distribution of the entire net income. Petitioners' attorney, Feuille, also drew this indenture. The 1959 trusts were also funded by petitioners with gifts of stock, and gift tax returns were timely filed claiming the $3,000 per donee annual gift tax exclusion. The respondent audited these returns, and found that the income provisions satisfied the requirements for the $3,000 annual exclusion.

In the latter half of 1965, petitioners decided to create new Clifford trusts for the benefit of their grandchildren. These new trusts were designed to take the place of the 1955 trusts which were to expire in March 1966. In September or October 1965, Roderick met with Feuille and requested that he draw up a new 10-year trust for the benefit of the grandchildren. Roderick indicated that he wanted the new trust to be like the 1955 and 1959 trusts, and that he wanted to be able to use the $3,000 per donee annual gift exclusion.

In October 1965, Roderick wrote to his accountant, James Gilger (hereinafter Gilger), indicating that petitioners were planning to create two short-term trusts for the benefit of their grandchildren and that they wished to take advantage of the annual exclusion. Roderick asked Gilger to compute the amount of gift tax which would be owing for each petitioner for 1965 and 1966 based on gifts to these trusts. A copy of this letter was sent to Feuille.

Shortly thereafter, Roderick wrote to Feuille requesting that he confirm the gift tax liability for each petitioner as computed by Gilger. On November 1, 1965, Feuille wrote to Roderick confirming Gilger's calculations.

At the time of the discussions relating to the creation of these new trusts, Feuille was concerned about the spendthrift tendencies of one or more of petitioners' grandchildren. He believed that if the grandchildren had an unrestricted right to the income, they might become too independent of their parents and escape parental control. After discussing this problem with the trust officer of the bank designated as

trustee under the 1955 trust, he decided to draft the instrument to provide that the income to the grandchildren under the new trusts would be distributable or subject to accumulation in the discretion of the trustee. In this way some measure of control over the actions of the grandchildren could be maintained.

Feuille, without consulting petitioners concerning the changes, thereupon drew up the new trust indenture (hereinafter the 1965 trust). It provided in part:

(b) During the continuance of the trust and while the beneficiary is alive, the Trustee may use and disburse the income and accumulated income of the trust for the use and benefit of the beneficiary of the trust to the extent and in the amounts deemed necessary, proper or advisable by the Trustee in his sole and absolute discretion, to provide for the care, support, education, * * *

Feuille sent the draft of the 1965 trust agreement to petitioners with instructions that they execute it and transfer the stock in accordance with their wishes. Upon receipt of the agreement, and before signing it, petitioners read it. Although Roderick was familiar with the rule that only gifts of present interests qualified for the $3,000 per donee annual exclusion, and that a present interest meant that the income from the trust must be absolutely distributable to the beneficiaries, he was unaware that the 1965 trust did not so provide. He thought it was substantially the same as the 1955 and 1959 trusts with respect to the income provisions.

On December 20, 1965, petitioners executed the 1965 trust agreement creating eight separate trusts, one for the benefit of each of their eight grandchildren. On the same date, each petitioner transferred an undivided one-eighth interest in his community one-half share of 20,000 shares of $20 par value preferred stock of El Paso Times, Inc., to each of the eight trusts created under the agreement. On March 20 and 30, 1966, each petitioner transferred an undivided one-eighth interest in his community one-half share of 1,000 and 19,000 shares, respectively, of the $20 par value preferred stock of El Paso Times, Inc., to each of the eight trusts.

Gilger prepared each petitioner's gift tax return for 1965 and 1966, and reported the transfers under the 1965 trust agreement. On each return, eight $3,000 annual exclusions were claimed. Petitioners first learned that the income provisions of the 1965 trust differed from those of the 1955 and 1959 trusts when respondent's agents audited petitioners' 1965 gift tax returns.

In the notices of deficiency, respondent determined that under section 2503(b) the $3,000 annual exclusions for the eight grandchildren were not allowable for 1965 and 1966 since all the gifts made in trust for those years were gifts of future interests.

OPINION

Petitioners concede that the 1965 trust agreement as prepared by Feuille and executed by them does not fulfill the requirements of section 2503(b)[2] and the amplifying regulations,[3] and, consequently, all the gifts thereunder except the ones for Edward Evan Roderick do not qualify for the annual exclusions.[4] Since the trust instrument did not confer on the beneficiaries an "unrestricted right to the immediate use, possession, or enjoyment" of the income from the entrusted property, sec. 25.2503-3(b), Gift Tax Regs., but rather gave the trustee discretion to decide whether such income would be distributed to the beneficiaries, this concession was consistent with the decided cases. *Fondren* v. *Commissioner*, 324 U.S. 18 (1945) ; *Prejean* v. *Commissioner*, 354 F. 2d 995 (C.A. 5, 1966), affirming per curiam a Memorandum Opinion of this Court.

In connection with their briefs, however, petitioners have moved that the record be reopened to permit them to offer in evidence a State court decree reforming *nunc pro tunc* paragraph (b) of the 1965 trust agreement to conform it with paragraph (b) of the 1955 agreement, both quoted in our Findings. Petitioners explain that they have not yet obtained the reformation decree because, in substance, they are concerned that they and the trust beneficiaries will be entrapped—i.e., that this Court will hold that the decree is ineffective to support their claim to the 1965 and 1966 gift tax annual exclusions but that the Internal Revenue Service will rule that the beneficiaries will "have to pay income taxes on the basis of the reformed instrument which would greatly exceed the income taxes they would have to pay

---

[2] SEC. 2503. TAXABLE GIFTS.

(b) EXCLUSIONS FROM GIFTS.—In the case of gifts (other than gifts of future interests in property) made to any person by the donor * * * the first $3,000 of such gifts to such person shall not, * * * be included in the total amount of gifts made during such year. * * *

[3] Gift Tax Regs. :

Sec. 25.2503-2. Exclusions from gifts.

Section 2503(b) provides that the first $3,000 of gifts made to any one donee * * * except gifts of future interests in property as defined in §§ 25.2503-3 and 25.2503-4, is excluded in determining the total amount of gifts for the calendar year. In the case of a gift in trust the beneficiary of the trust is the donee. The entire value of any gift of a future interest in property must be included in the total amount of gifts for the calendar year in which the gift is made.

Sec. 25.2503-3. Future interests in property.

(a) No part of the value of a gift of a future interest may be excluded in determining the total amount of gifts made during the calendar year. "Future interests" is a legal term, and includes reversions, remainders, and other interests or estates, whether vested or contingent, and whether or not supported by a particular interest or estate, which are limited to commence in use, possession or enjoyment at some future date or time. * * *

(b) An unrestricted right to the immediate use, possession, or enjoyment of property or the income from property * * * is a present interest in property. * * *

[4] On brief respondent concedes that petitioners' 1965 and 1966 transfers to the 1965 trust for the benefit of Edward Evan Roderick were gifts of present interests within the meaning of sec. 2503(c) and qualify for the $3,000 annual exclusion.

on the basis of the unreformed instrument." To protect the parties from "being caught in such a trap," petitioners ask us "to enter a preliminary order or ruling of some kind indicating that if the trust in question is reformed in proper State court proceedings with the Government being given ample notice and opportunity to contest if it desires, the reformation decree will be given retroactive effect by the Court in this case."

Even if petitioners should be able to obtain a reformation of paragraph (b) of the 1965 trust agreement to conform it *nunc pro tunc* with the corresponding provisions of the 1955 and 1959 trust instruments, we are not at all convinced that the disputed annual exclusions would be allowable. In a host of cases this Court, as well as other courts, have denied tax effect to retroactive amendments or State court decrees reforming various kinds of instruments *nunc pro tunc*. See, e.g., *Van Den Wymelenberg* v. *United States*, 397 F.2d 443, 445 (C.A. 7, 1968), certiorari denied 393 U.S. 953 (1968); *Emerson Institute* v. *United States*, 356 F.2d 824 (C.A.D.C. 1966), certiorari denied 385 U.S. 822 (1966); *M. T. Straight's Trust* v. *Commissioner*, 245 F.2d 327, 329 (C.A. 8, 1957), affirming 24 T.C. 69 (1955); *Piel* v. *Commissioner*, 340 F. 2d 887, 891 (C.A. 2, 1965), affirming a Memorandum Opinion of this Court; *Sinopoulo* v. *Jones*, 154 F.2d 648 (C.A. 10, 1946); *Loggie* v. *Thomas*, 152 F.2d 636 (C.A. 5, 1945); and *Samuel S. Davis*, 55 T.C. 416 (1970). The rule would appear to be particularly applicable in a situation like this one where over 6 years of the 10-year life of the trusts have already expired and the reasons for giving the trustee discretionary power to withhold distributions have already been served.[5]

In any event, we must deny petitioners' motion. At this point we do not know what the reform decree would provide or, indeed, whether the State court would order a reformation. What petitioners are asking is that we render an advisory opinion or a declaratory judg-

---

[5] Petitioner argues that *Flitcroft* v. *Commissioner*, 328 F.2d 449 (C.A. 9, 1964), reversing 39 T.C. 52 (1962), reflects the correct rule of law. In that case, however, a technically revocable trust instrument effective for 10 years executed in January 1953, was amended retroactively on July 30, 1954, to make it irrevocable, and a State court judgment was entered Nov. 13, 1961, decreeing that the instrument was irrevocable as of the date of its execution on Jan. 1, 1953. The taxes in controversy were 1954, 1955, and 1956 income taxes. Thus, during the tax period, the trust instrument had already been amended; on this ground the Court of Appeals distinguished (p. 457) its prior opinion in *Gaylord* v. *Commissioner*, 153 F. 2d 408 (C.A. 9, 1946), affirming 3 T.C. 281 (1944), where the trust instrument was neither reformed nor amended in the tax year. In addition, the power of revocation, on which the asserted tax liability hinged in *Flitcroft*, had never been exercised. In the instant case, the instrument remained unchanged during the tax years and, in view of the reasons assigned by petitioner for their reluctance to proceed with a reformation proceeding, we infer that the trustee has exercised its discretionary power to withhold distributions to the beneficiaries. Also, the *Flitcroft* opinion focuses primarily upon the effect of collusive or nonadversary State court decrees, the subject of a subsequent Supreme Court decision. *Commissioner* v. *Estate of Bosch*, 387 U.S. 456 (1967).

ment. This we cannot do. The jurisdiction of this Court is limited to the determination of the deficiencies and overpayments. Its function is to decide real issues in specific cases upon particular facts. It does not have jurisdiction to resolve abstract questions based on assumed facts. *Emanuel Cohen,* 20 B.T.A. 647, 648, (1930); *James R. Parkey, et al.,* 16 B.T.A. 441, 450 (1929); cf., e.g., *Wilson* v. *Wilson,* 141 F.2d 599, 600 (C.A. 4, 1944); *Commissioner* v. *Procter,* 142 F.2d 824, 827 (C.A. 4, 1944), certiorari denied 323 U.S. 756 (1944); cf. also 28 U.S.C. sec. 2202. This case must be decided on the facts as they exist, and, as noted above, petitioners concede that, with the exception of the Edward Evan Roderick transfers, they are not entitled to the gift tax annual exclusions under the instrument as it stood in 1965 and 1966. To reflect the conceded adjustments,

*Decisions will be entered under Rule 50.*