Sebough S. **SHIELDS**, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

Civ. A. No. C–62–584.

United States District Court
N. D. Ohio, E. D.
March 31, 1965.

William F. Snyder, Marshman, Hornbeck, Hollington, Steadman & McLaughlin, Warren M. Briggs, Cleveland, Ohio, for plaintiff.

Merle M. McCurdy, U. S. Dist. Atty., Cleveland, Ohio, Stephen K. Cochran, Dept. of Justice, Washington, D. C., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

BATTISTI, District Judge.

### FINDINGS OF FACT

1. On March 18, 1952, Carl and Nancy Shields filed a joint income tax return for the taxable year 1951. The return showed a net income of $26,313.40 and a tax of $7,511.76.

2. On June 8, 1954, the Commissioner of Internal Revenue sent a notice of deficiency to the Carl Shields in which it was asserted that the Shields had understated their gross income for 1951 by $169,072.14. In the same notice, deficiencies were also asserted for the years 1949 ($167,962.28 understatement) and 1950 ($234,627.75 understatement). The deficiencies were computed on a net worth basis.

3. In computing the net worth of Carl Shields, the most significant factor was the Shields Engineering Company. It is clear that the Government recognized that said company was being operated as a partnership. (Pls. Exhibit 3.) In computing the net worth of Carl Shields, the Government reviewed the records of the Shields Engineering Company and found, in substantial amounts, specific understatements of said company's income. For example, the alleged specific understatements for 1949–51 were as follows:

| | |
|---|---|
| 1949 | $126,051.63 |
| 1950 | 211,219.88 |
| 1951 | 95,522.06 (Ex. 3) |

Further, there were unrecorded drawings for the same years in the following amounts:

| | |
|---|---|
| 1949 | $ 56,643.98 |
| 1950 | 116,179.12 |
| 1951 | 149,118.18 |

4. In computing Carl Shields' income for 1951 by the net worth method, the Government treated the entire amount of the specific understatement of the Shields Engineering Company's income for 1951 ($92,522.06) as an addition to the partnership equity of Carl

Shields, and, thus attributed all such income to Carl Shields. The same approach was also taken for the years 1949 and 1950.

5. In its net worth analysis, the Government treated all assets standing in the name of Carl Shields as assets belonging entirely to Carl Shields.

6. On August 16, 1954, Carl and Nancy Shields petitioned the Tax Court for a redetermination of their 1949, 1950, and 1951 income tax. In the petition it was alleged that the Commissioner erred in assessing the deficiencies for the years 1949, 1950, and 1951. One of the alleged errors was in the Commissioner's failure to recognize the partnership nature of the Shields Engineering Company.

7. There is no evidence in the record which sheds light on the course of that litigation during the period from 1954 until mid 1959. On August 11, 1959, Carl Shields died and his estate was substituted for him in the Tax Court proceedings.

8. Carl's estate was probated as Case #33–263 in the Probate Court of Lake County, Ohio.

9. On February 3, 1960, the Internal Revenue Service filed a claim against the Carl Shields' estate in the amount of $2,640,977.96. This claim included the alleged deficiency in Carl and Nancy Shields' 1951 tax return.

10. On June 1, 1960, the "Inventory and Appraisement" for the Carl Shields' estate was filed in the Probate Court of Lake County. Schedule C of the Inventory listed stocks of the following corporations as property of the decedent.

1. Packard Motor Car Company
2. Williams & Company, Inc.
3. Elastic Stop Nut Corporation
4. Verney Corporation
5. United States Truck Liner, Incorporated
6. Signode Steel Strapping Company
7. Harris-Seybold Company
8. Seiberling Rubber
9. North American Bank Company
10. Globe Steel Tube Company
11. Joseph & Feiss Company
12. Art Metal Construction Company
13. Dayton Malleable Iron Company
14. Airway Industries, Incorporated
15. Carborundum Company
16. General Motors Corporation

---

Schedule E of the Inventory listed the following Ohio real estate.

1. East 156th St., Cleveland, Ohio (3 lots)
2. Beach Grove Subdivision, Cleveland, Ohio (1 lot)
3. Grovewood, Ave., Cleveland, Ohio (2 lots)
4. Euclid Ave., Cleveland, Ohio (1 lot)
5. Woodworth Ave., Cleveland, Ohio (1 lot)
6. Euclid Ave., Cleveland, Ohio (2 lots)
7. North Ridge Rd., Madison Twp. (4 lots)
8. Bishop Rd., Willoughby, Ohio (1 lot)
9. Madison-Chardon Rd., Madison Twp. (1 lot)
10. Madison Twp. (2 lots)

Schedule E–1 of the Inventory listed 5 parcels of real estate located in Florida.

11. Sometime on or after June 20, 1960, Sebough S. Shields, brother of Carl Shields, filed exceptions to the Inventory of the Carl Shields' estate. In a document styled "Exceptions to Inventory" (Exhibit H), Sebough Shields (hereinafter Sebough S. Shields will be referred to as Sebough and Carl Shields will be referred to as Carl) excepted to the Inventory—" * * * for the reason that * * * petitioner (Sebough) was a partner with the decedent in the business known as 'The Shields Engineering and Manufacturing Company'; that all of the securities set forth in Schedule C and all of the real estate described in Schedule E and Schedule E–1, saving therefrom the real estate described in Schedule E–1, were procured by aid and from the funds of said partnership, and thereby constitute partnership assets, and therefore the said Nancy Shields, Executrix, holds one-half (½) of said assets in trust for the benefit of your petitioner." Sebough further claimed that the property listed in Schedule E–1 was purchased entirely with Sebough's personal funds and therefore was held in its entirety in trust for the benefit of Sebough.

12. On July 18, 1960, a hearing was held in the Lake County, Ohio, Probate Court on the matter of Sebough's exceptions to the Inventory. The Director of Internal Revenue was notified of the hearing and one of his representatives was present at the same. While a representative of the Government was present, the Government in no manner participated in the proceedings. The hearing commenced and was concluded on July 18, 1960.

13. In an opinion dated August 12, 1960, Judge Pollock of the Lake County Probate Court held in part as follows:

"From the evidence the Court finds that all of the securities listed in Schedule E were purchased with partnership assets and are in fact jointly owned in equal shares by the deceased and the exceptor.

"The Court further finds as a matter of fact that the exceptor does not have sole title to and ownership of the first parcel described in Schedule E of the Inventory and Appraisal as being situated in the City of Cleveland, County of Cuyahoga, and State of Ohio, and known as being sub-lots numbers Twenty (20), Twenty-One (21), and Twenty-Two (22), in the Eastwood Subdivision of a part of original Euclid Township Tract No. 16, but that exceptor is entitled to an undivided one-half interest in said parcel. (Said parcel was in error set forth in said Exceptions as the real estate described in Schedule E-1).

"The Court further finds as a matter of fact that all of the real estate listed in Schedule E and E-1 is owned equally by the decedent and exceptor.

"A journal entry may be prepared and filed in conformity with these findings."

14. The Probate Court's opinion was journalized on August 20, 1960.

15. Both prior and subsequent to the Probate Court proceedings, negotiations were taking place between the Government and Carl's estate with regard to the tax case then pending before the Tax Court.

16. At trial, Mr. William Allen, the Internal Revenue Service's attorney, who handled the Carl Shields' case from 1959 until its conclusion, testified as follows:

"It's very difficult at this time to place the exact dates without reference to my notes, which I unfortunately can't find. But at some time during the period between October, 1960, and the spring of 1961, we determined that if the issue in Carl's case with respect to the 50 per cent of partnership profits was going to be lost by the Government, then perhaps there would be some equitable way to recover the .50 per cent from Sebough under Section 1311 through 1315 of the 1954 Code. At some point during this period we broached the matter to Mr. Snyder and Mr. Briggs.

"And there were discussions concerning the applicability of these sections of the Code to Mr. Sebough Shields' 1949, 1950, and 1951 income. We were unable to reach any settlement of this issue. We were concerned as to how we would go about reaching a determination if we were to concede that 50 per cent of this income was Sebough's, how we would arrive at a determination within the meaning of Section 1313."

17. Sometime in the fall of 1961, the parties agreed to settle the litigation pending in the Tax Court. The basis of this settlement is reflected in a collateral agreement which was signed by counsel for the estate of Carl, counsel for Sebough, and Sebough himself. This agreement reads as follows:

WHEREAS, there are presently pending in the Tax Court of the United States the following cases:

| Petitioner | Docket No. | Taxable Year |
|---|---|---|
| Sebough S. Shields | 48494 | 1947 |
| Sebough S. Shields | 52408 | 1948 |
| Carl S. Shields | 48496 | 1947 |
| Carl S. Shields | 52409 | 1948 |
| Carl S. Shields | 54244 | 1942 through 1948 |
| Carl S. Shields and Nancy Shields | 54243 | 1949 through 1951 |

WHEREAS, in Docket Nos. 54244 and 54243 the respondent has determined deficiencies against Carl S. Shields and against Carl S. Shields and Nancy Shields based upon a reconstruction of their income by the so-called "net worth" method; and

WHEREAS, in the said reconstruction, respondent has taken the position that assets attributable to income realized by the partnership of Shields Engineering and Manufacturing Company and not reported for income tax purposes were entirely the property of Carl S. Shields; and

WHEREAS, the parties have agreed to settle each of the above-named cases on the basis of treating one-half of all assets attributable to unreported partnership income as assets of Sebough S. Shields and on the basis of excluding the said one-half of the said assets from the net worth of Carl S. Shields; and

WHEREAS, the respondent has advised the representatives of Sebough S. Shields that respondent is contemplating asserting a deficiency against Sebough S. Shields under the provisions of sections 1311 through 1315 of the Internal Revenue Code of 1954; and

WHEREAS, it is the desire of the parties to agree upon the facts upon which the decisions in the above-named docketed Tax Court cases are based, while at the same time reserving to Sebough S. Shields the right to contest any assertion of deficiencies against him for the years 1949, 1950, and 1951;

NOW, THEREFORE, the undersigned agree that the following statement is a true and accurate statement of facts:

On June 8, 1954, the Commissioner of Internal Revenue issued a statutory notice of deficiency to Carl S. Shields for the calendar years 1942 through 1948, inclusive. On the same date, the Commissioner

issued a statutory notice of deficiency to Carl S. and Nancy Shields with respect to their calendar years 1949 through 1951, inclusive. In the said notices, the Commissioner determined deficiencies as follows:

| Year | Deficiency | 293(b) Penalty | 294(d) (2) Penalty |
|------|-----------|----------------|--------------------|
| 1942 | $ 27,857.58 | $ 13,928.79 | $  — |
| 1943 | 115,403.12 | 58,140.56 | 7,380.39 |
| 1944 | 165,830.39 | 82,915.20 | 10,179.33 |
| 1945 | 224,797.59 | 112,398.80 | 13,752.98 |
| 1946 | 23,658.35 | 11,829.18 | 1,415.39 |
| 1947 | 51,809.96 | 26,238.12 | 3,175.58 |
| 1948 | 92,210.01 | 46,105.01 | 5,666.37 |
| 1949 | 102,464.70 | 51,232.35 | 6,073.29 |
| 1950 | 162,682.92 | 81,341.46 | 9,863.63 |
| 1951 | 121,750.79 . | 60,875.40 | 7,570.89 |

Carl S. and Nancy Shields filed petitions in the Tax Court with respect to these statutory notices of deficiency, and the cases were docketed with the Court as Docket Nos. 54244 and 54243, respectively.

In determining the deficiencies set forth in the above-described statutory notices of deficiency, the respondent reconstructed the net income of Carl S. Shields for the years 1942 through 1951 by the so-called "net worth" method. Among the assets included by the respondent in the net worth of Carl S. Shields was an interest in a partnership known as Shields Engineering and Manufacturing Company. The net income reported in the partnership return for each of the said years was reported one-half by Carl S. Shields and one-half of his partner and brother, Sebough S. Shields. However, the respondent determined that income earned by the partnership during the years 1942 through 1951 and not reported for Federal income tax purposes was entirely the income of Carl S. Shiedls. Accordingly, in the statutory notices of deficiency addressed to Carl S. and Nancy Shields, the respondent determined that the increment in partnership equity of the said company resulting from understatements of partnership net income was entirely the property of Carl S. Shields. Further, the respondent determined that certain other assets, such as real property, cash and securities, together with income earned thereon, which assets had been purchased with partnership funds, were entirely the property and income of Carl S. Shields.

During negotiations with respect to the asserted deficiencies, Carl Shields died, and negotiations continued with the representatives of Nancy Shields, personally, and Nancy Shields, Executrix of the Estate of Carl S. Shields, Deceased. This estate was administered as Case No. 33–263, Probate Court of Lake County, Ohio, and, during the course of the administration, that Court determined that a substantial amount of real and personal property, which represented the in-

crement in partnership equity and which the Commissioner had been treating as the property of Carl S. Shields, in fact belonged equally to Sebough S. Shields, the partner and brother of Carl S. Shields. This decision was contained in an order entered with respect to a claim asserted by Sebough S. Shields, after a hearing to which Sebough S. Shields was a party.

For purposes of the stipulations filed with the Tax Court in the above-named docketed cases, the parties have relied where applicable on the order of the Probate Court, and have treated the increment in partnership equity and the income represented thereby, as belonging one-half to Carl Shields and one-half to Sebough Shields. In addition, income from rents, dividends and interest derived from assets attributable to unreported partnership income, which were treated in the notices of deficiency in the docketed cases as attributable solely to Carl S. Shields, have likewise been treated in the settlement of these cases as belonging one-half to Carl S. Shields and one-half to Sebough S. Shields.

In accordance with the above-described settlement, Sebough S. Shields has agreed to include in his 1947 and 1948 income, one-half of the increment in partnership equity represented by unreported partnership income. In addition, Sebough S. Shields has agreed to include in his 1947 and 1948 income, one-half of the rents, dividends and interest derived from assets attributable to unreported partnership income.

Treatment of the partnership income and other income in a manner consistent with the settlement of the above-named docketed cases would result in additional income to Sebough S. Shields for the years 1949, 1950, and 1951, over and above the amounts reported by him in those years in the following amounts:

| Year | Additional Unreported Income |
|------|------------------------------|
| 1949 | $ 63,715.06 |
| 1950 | 108,270.95 |
| 1951 | 51,758.12 |

It is agreed that the settlement stipulations filed with the Tax Court in the above-named docketed cases are based on the facts and conclusions as are set forth hereinabove.

———◆———

18. Except for the Whereas Clauses, the agreement set forth immediately above was incorporated verbatim into a stipulation filed in the Tax Court. This stipulation was signed by counsel for the estate of Carl and counsel for the Government. On the basis of the stipulated facts, the Tax Court entered a decision holding that there was a $30,204.15 deficiency in Carl and Nancy Shields' 1951 income tax.[1] This defi-

I. Only taxable year 1951 is involved in the present action.

ciency was arrived at on the basis of Carl and Nancy Shields failure to report and pay tax upon one-half of the following items of income:

Partnership operations
Cleveland (Ex. 3, p. 15, 17)

| | |
|---|---:|
| Unrecorded sales | $ 88,438.23 |
| Unrecorded interest | 6,288.22 |
| Returns | (9,654.79) |
| Discounts | . (440.08) |

Los Angeles (Ex. 3, p. 15, 18)

| | |
|---|---:|
| Profits per books | 11,515.48 |
| Salary | (3,625.00) |
| Subtotal (Ex. B) | $ 92,522.06 |

Rental income (loss) (Ex. 4)

| | |
|---|---:|
| Grovewood Ave., Cleveland | $ 660.00 |
| Euclid Ave. | 750.00 |
| Woodworth Ave. | 1,785.00 |
| Euclid Ave. | 2,400.00 |
| Coral Gables, Florida | 1,622.00 |
| Coral Gables, Florida | 1,800.00 |
| Burbank, California | 650.00 |
| Depreciation, etc. (Tr. 115, 181) | (10,000.00) |
| Subtotal (Ex. B) | $ (333.00) |

Interest income (Ex. 4 p. 5)
Bank accounts

| | |
|---|---:|
| Cleveland Trust Co. | $ 255.19 |
| Society for Savings | 490.85 |
| California Bank | 6.08 |

Notes

| | |
|---|---:|
| Matheo Chemical | 55.89 |
| Treasury Bonds | 1,450.00 |
| Subtotal (Ex. B) | $ 2,258.01 |

Dividend income (Ex. 4 p. 6)

| | |
|---|---:|
| Packard Motor Car Co. | $ 375.00 |
| Williams & Co., Inc. | 220.00 |
| Elastic Stop Nut Corp. | 260.00 |
| Verney Corp. | 637.50 |
| U. S. Truck Lines, Inc. | 120.00 |
| Signode Steel Strapping Co. | 235.75 |
| Harris-Seybond Co. | 453.10 |
| Seiberling Rubber Co. | 312.50 |
| North American Bank Co. | 600.00 |
| Globe Steel Tube Co. | 375.00 |
| Joseph & Feiss Co. | 62.50 |
| Art Metal Constr. Co., | 200.00 |
| Dayton Malleable Iron Co. | 339.12 |
| Airway Industries, Inc. | 150.00 |
| Carborundum Co. | 75.00 |
| General Motors Corp. | 1,000.00 |
| Subtotal (Ex. B) | $ 5,415.47 |

| | |
|---|---:|
| Net long term capital gain (Ex. B) | 3,653.70 |
| TOTAL | $103,516.24 |

19. In a report dated May 25, 1962, an Internal Revenue examiner proposed to include in Sebough's 1951 gross income one-half of the items of income set forth in Finding of Fact No. 18 ($51,758.12) and to assess the resulting adjustment of $36,937.10. The proposed adjustment of $36,937.10 plus interest of $22,592.21 was paid in advance on May 25, 1962, and assessed May 31, 1962.

20. On May 25, 1962, Sebough filed a claim for refund of the $59,529.31. The claim was based on the grounds that Sections 1311 through 1315 of the Internal Revenue Code of 1954 did not apply to the assessment of the adjustment, and in any event the assessment was not timely under Section 1314(b).

21. The present action for a refund of the $59,529.31 was filed on July 21, 1962.

22. Plaintiff contends, and the Government concedes, that the assessment of the deficiency against Sebough Shields was barred by Section 275 of the 1939 Internal Revenue Code. The Government contends, however, that Sections 1311–1315 of the Internal Revenue Code of 1954 permitted the assessment of the deficiency.

23. Plaintiff contends that facts of this case do not fall within the purview of Sections 1311–1315, and further, even if the sections are applicable, the assessment was barred in that it was not made within a one-year period provided in Section 1314(b).

## CONCLUSIONS OF LAW

1. This Court has jurisdiction under 26 U.S.C.A. § 1346(a) (1).

2. The decision of the Tax Court in the case involving the Estate of Carl S. Shields and Nancy Shields was a determination as defined in Section 1313 (i. e. a decision of the Tax Court) and described in Section 1312(3) (B).

Section 1312(3) (B) reads as follows: "Items not included in income.—The determination requires the exclusion from gross income of an item not included in a return filed by the taxpayer and with respect to which the tax was not paid but which is includible in the gross income of the taxpayer for another taxable year or in the gross income of a related taxpayer."

■ Plaintiff urges that since the deficiency was assessed on the basis of a net worth analysis, the determination did not involve an "item" of income as required by Section 1312(3) (B). This argument lacks merit, for even though the deficiency was originally determined by the net worth method, the ultimate determination by the Tax Court was on the basis of specific items of income. Where, for one reason or another, it has been necessary for the Government to reconstruct a taxpayer's income by the net worth method, it would appear to be contrary to the manifest purpose of the mitigation provisions to hold that said provisions are inapplicable if and when it subsequently develops that the underlying items of income would otherwise be subject to an adjustment pursuant to Sections 1311–1315.

■ 3. Plaintiff contends that if there was a "determination" within the meaning of Sections 1311–1315, it was the Probate Court decision which became final on September 9, 1960, and since the deficiency was not assessed within one year after that date, it was barred by Section 1314(B). This contention lacks merit. It is clear that the basic purpose behind Sections 1311–1315 is to provide for adjustments in cases where inequities result from particular *tax* determinations. It seems equally clear that the purpose behind Section 1312 is to describe the particular *tax* determinations which form a basis for such an adjustment. The Court, therefore, finds that it is only upon the ultimate disposition of a tax dispute that the one-year period provided for under Section 1314 begins to run. The decision of the Probate Court was not a determination which is described in Section 1312.

4. The assessment of the deficiency against Sebough Shields was not barred by any law or rule of law at the time

the notice of deficiency was sent to Carl and Nancy Shields.

5. The assessment of the deficiency against Sebough was made within one year after the decision of the Tax Court became final.

6. The assessment of the deficiency against Sebough Shields was authorized by 26 U.S.C.A. §§ 1311–1314; and, therefore, the claim for a refund was properly denied.

7. An order may be drawn in accordance with these findings of fact and conclusions of law.