**Sebough S. SHIELDS, Plaintiff-Appellant,**

v.

**UNITED STATES of America,
Defendant-Appellee.**

**No. 16653.**

United States Court of Appeals
Sixth Circuit.

March 23, 1967.

Richard R. Hollington, Jr., Cleveland, Ohio, for appellant, William F. Snyder, Cleveland, Ohio, on brief, Warren F. Briggs and Marshman, Hornbeck, Hollington, Steadman & McLaughlin, Cleveland, Ohio, of counsel.

Mark S. Rothman, Atty., Dept. of Justice, Washington, D. C., for appellee, Richard M. Roberts, Acting Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Washington, D. C., on brief, Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, of counsel.

Before O'SULLIVAN and PECK, Circuit Judges, and FOX, District Judge.

O'SULLIVAN, Circuit Judge.

The District Court for the Northern District of Ohio, Eastern Division, dismissed the suit of appellant-taxpayer, Sebough S. Shields, who sought a refund of $59,529.31 of income taxes and interest thereon, paid by appellant to defendant-appellee, United States. The tax year involved was 1951 and the assessment was made by the Commissioner on June 29, 1962. Such assessment was barred by the statute of limitations, Int. Rev.Code of 1939, § 275(a), (c) unless the Commissioner was correct and timely in applying the "mitigation provisions" of Sections 1311–1315 of the Internal Revenue Code of 1954.

Appellant, Sebough S. Shields, and his now deceased brother, Carl Shields, were, from the early 1940's until Carl's death in August, 1959, partners in an enterprise known as Shields Engineering and Manufacturing Co. During those years each of them reported, on his respective income tax return, one-half of the partnership earnings as *reported* on the partnership tax return. The partnership returns, however, failed to report very large amounts of its taxable earnings. As was later determined, these unreported earnings had been invested in real and personal assets acquired and carried in the name of Carl Shields.

The critical question here is whether a September 9, 1960, Ohio Probate Court order finding that Sebough S. Shields owned one-half of those assets, or a Tax Court order entered January 19, 1962, settling litigation in that court over Carl Shields' tax liabilities, was the "determination" referred to in Section 1312 (3) (B) of the Code.[1] Section 1314(b) of the Code required assessment to be made within one year from such "determination". The June 29, 1962, assessment against Sebough Shields was more than one year after the Probate Court order of September 9, 1960, but within one year of the Tax Court order of January 19, 1962. If the Probate Court order constituted the relevant "determination" the assessment against appellant was barred.

In the mid-fifties, the Commissioner began investigation of Carl Shields' income tax returns covering the years from 1942 through 1951. Upon the correct assumption that assets carried in Carl's name came from unreported partnership earnings, the Commissioner went forward to reconstruct Carl's earnings and tax liability by the "net worth" method. Whether the annual increases in Carl's net worth came from his legitimate share or a wrongful appropriation of partnership earnings was unclear, but in either event such earnings were taxable and had escaped taxation. If any part of

---

1. § 1312(3) (B) authorizes an "adjustment" in the return of a taxpayer, notwithstanding the statute of limitations, when a "determination requires the exclusion from gross income of an item not included in a return filed by the taxpayer [Carl] and with respect to which the tax was not paid but which is includible * * * in the gross income of a related taxpayer [Sebough]."

these unreported partnership earnings belonged to Sebough Shields, as was later determined, he had failed to report or pay income tax on them for 1951, the year here involved, and other years. In May of 1954, the Commissioner sent Carl and his wife notices of deficiency for 1951 and several years preceding. In August, 1954, Carl and his wife proceeded in the Tax Court for redetermination of the deficiencies assessed, relying in part on the assertion that the Commissioner had erred in attributing to Carl all of the unreported income of the partnership. The resulting litigation pended in the Tax Court from 1954 until it was finally settled on January 19, 1962.

Carl died in 1959 and his estate was probated in the Probate Court of Lake County, Ohio; his wife was the executrix of his will. On February 3, 1960, the Commissioner filed a claim against Carl's estate for unpaid taxes in excess of two million dollars. In a pleading entitled Exception to Inventory, Sebough Shields asserted that he was the owner of substantially one-half of the numerous real and personal assets listed in the inventory of Carl's estate. A hearing was held in the Probate Court and appellant Sebough Shields offered proofs to demonstrate his ownership in the involved assets. These consisted of testimony by the accountant for the partnership and the introduction of its books and records. The accountant was cross-examined by counsel for the estate, but no other attempt was made to prove that the assets in dispute belonged solely to Carl. The government took no part in the proceedings, contenting itself with stationing an agent in the courtroom as an observer. The Probate Judge determined that Sebough was the owner of one-half of the assets involved; this decision was not appealed and became final on September 9, 1960. The order entered by the Probate Court was bottomed upon a finding that the assets "were purchased with partnership assets and are in fact jointly owned in equal shares by the deceased and the exceptor." The Ex-

ception to Inventory filed by Sebough did not purport to identify the years in which "the funds of said partnership" were used by Carl to acquire the assets, whether from current earnings or accumulations thereof, and it made no mention and sought no relief or adjudication of the tax involvement or consequences of what Carl had done. Neither did the opinion of the Probate Court or the Journal entry thereon mention or assume to pass upon the income tax consequences of its finding and order.

The Tax Court litigation whereby Carl, and later his estate, sought review of the Commissioner's 1954 assessment remained pending during the course of the Probate Court proceedings; a continuance in the Tax Court had been granted on motion of counsel for the estate. Negotiations leading to a conclusion of the Tax Court proceedings continued after the Probate Court order of September 9, 1960, and in October of 1961 an agreement was reached to which the appellant Sebough Shields was a party. He signed the stipulation of settlement in which the assessments made by the Commissioner against Carl Shields for 1951 and other years were reduced by one-half; the stipulation further recited that:

"For purposes of the stipulation filed with the Tax Court * * * the parties have relied where applicable on the order of the Probate Court, and have treated the increment in partnership equity and the income represented thereby, as belonging one-half to Carl Shields *and one-half to Sebough Shields.* In addition, income from rents, dividends and interest derived from assets attributable to unreported partnership income, which were treated in the notices of deficiency in the docketed cases as attributable solely to Carl S. Shields, have likewise been treated in the settlement of these cases as belonging one-half to Carl S. Shields *and one-half to Sebough S. Shields.*" (Emphasis supplied.)

The Tax Court litigation was formally settled upon the basis of this stipulation

**460**

by a decision entered on January 19, 1962. We cannot read that decision as other than a "determination" to "exclude" one-half of the 1951 unreported partnership income from the return of Carl Shields and to "include" it in the return of Sebough S. Shields. It represented, in our view, the "determination" referred to in Section 1312(3) (B) of the Code; that section allows an "adjustment" in a taxpayer's return when a

> "Determination requires the exclusion from gross income of an item not included in a return filed by the taxpayer [Carl Shields] and with respect to which the tax was not paid but which is includable in the * * * gross income of a related taxpayer [appellant Sebough S. Shields, by virtue of being a partner of Carl, Section 1313(c) (6)]."

A "determination" is defined in Section 1313(a) (1) as,

> "A decision by the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final."

If a deficiency is to be assessed on the basis of such a determination, it must be assessed "as if on the date of the determination one year remained before the expiration of the period of limitation." § 1314(b), Internal Revenue Code of 1954.

Appellant argues that the Probate Court order was an order by a "court of competent jurisdiction" and, consequently, may also be regarded as the "determination" referred to in Section 1312(3) (B); since it was entered September 6, 1960, and since the assessment against appellant Sebough S. Shields was made on June 29, 1962, the one year grace period allowed by § 1314(b) had elapsed. The United States contends that the decision of the Tax Court, entered January 19, 1962, was the only relevant "determination" and therefore the deficiency assessment of June 29, 1962, was timely made.

The District Judge concluded that the assessment of the deficiency against Sebough S. Shields for his admitted failure to include taxable income in his 1951 return was authorized by the mitigation provisions of the Internal Revenue Code and that it was made within one year of the relevant determination—the Tax Court decision. He dismissed appellant's complaint. We affirm the District Court judgment. The District Judge's Findings of Fact and Conclusions of Law are reported as Shields v. United States, 265 F.Supp. 770 (N.D.Ohio, 1965).

■ We do not consider it necessary to discuss the numerous cases [2] which have dealt with the binding effect of state court orders and decisions upon the taxing authorities of the United States. Even if the decision of the Probate Court of Lake County was conclusive upon the Commissioner to the extent that it resolved title to the assets which were inventoried in the estate of Carl Shields, it did not, nor did it purport to, resolve any questions of income tax liabilities. The legal consequences, taxwise, of Sebough's claim of ownership of one-half of Carl's inventoried assets were in no way put in issue or presented for decision in the Ohio Court, notwithstanding the fact that the government entered a claim for unpaid taxes against Carl's estate (which was not disposed of by the Probate Judge's order) and stationed an observer at the Probate hearing. See Stark v. United States, 351 F.2d 160, 162 (CA 6, 1965), cert. den. 384 U.S. 939, 86 S.Ct. 1454, 16 L.Ed.2d 538. That the determination of the title to such assets led to and was relied upon by the Tax Court and the parties involved in

2. See, e. g., Blair v. Commissioner of Internal Revenue, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937); Estate of Darlington v. Commissioner of Internal Revenue, 302 F.2d 693 (CA 3, 1962); Flitcroft v. Commissioner of Internal Revenue, 328 F.2d 449 (CA 9, 1964); Old Kent Bank & Trust Co. v. United States, 362 F.2d 444 (CA 6, 1966); Cadden v. Welch, 298 F.2d 343 (CA 6, 1962); Gallagher v. Smith, 223 F.2d 218 (CA 3, 1955).

making the stipulation settling the Tax Court litigation, did not make the Probate Court decision the fixing or determination of any income tax consequences.

The order of the District Judge does no more than properly require Sebough Shields to pay taxes on income he admittedly earned in 1951. We have considered appellant's other contentions raised before us and they do not persuade otherwise.

The judgment of the District Court is affirmed.