SAMUEL S. DAVIS AND JEANETTE A. DAVIS,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 2383–69, 2384–69. Filed December 9, 1970.

---

[1] The above-entitled cases were consolidated for purposes of trial, briefs, and opinion.

*David A. Johnston, Jr., David C. Stradley,* and *William R. Thyer,* for the petitioner.

*Robert A. Roberts,* for the respondent.

STERRETT, *Judge:* The respondent determined deficiencies in the Federal gift tax of the petitioners as follows:

|  | 1964 | 1965[2] |
|---|---|---|
| Samuel S. Davis | $4,501 | $112 |
| Jeanette A. Davis | 1,619 | 112 |

There are essentially two issues for our determination: (1) Whether the respondent erred in disallowing the petitioners' deductions from their gift tax on the ground that certain gifts in trust did not qualify as charitable under section 2522(a);[3] and (2) whether the respondent erred in disallowing the petitioners' exclusions from gifts on the ground that certain gifts were of future interests under section 2503(b) and were not for the benefit of minors within the meaning of section 2503(c). A third issue concerning whether the petitioners used their entire specific exemptions under section 2521 during 1964 will be resolved by our determination of the two aforementioned issues.

FINDINGS OF FACT

Some of the facts were stipulated. The stipulations and the exhibits attached thereto are incorporated herein by this reference.

Samuel S. and Jeanette A. Davis (hereinafter referred to as petitioners or Samuel and Jeanette individually), husband and wife, resided in Columbus, Ohio, at the time their petitions were filed herein. For the years 1964 and 1965 Samuel and Jeanette each filed separate

[2] The sole reason the taxable year 1965 is involved is due to the cumulative nature of the Federal gift tax. If we were to uphold the respondent's determination, thereby increasing the petitioners' taxable gifts for 1964, this would have the effect of increasing the petitioners' gift tax for 1965.

[3] All references by section are to the Internal Revenue Code of 1954 unless otherwise stated.

gift tax returns with the district director of internal revenue at Cincinnati, Ohio. On each of these gift tax returns the nonfiling spouse consented to have the subject gift considered to have been made one-half by him or her, as the case may be.

## *Issue 1*

On March 26, 1964, Samuel executed a document entitled "Trust Agreement" which designated "The City National Bank & Trust Company of Columbus" (hereinafter referred to as City National Bank) as trustee. On the same date Samuel delivered to the trustee 2,000 shares of the common stock of the Corrugated Container Co. (hereinafter referred to as Corrugated), now known as Corco, Inc., having as of March 26, 1964, a fair market value of $40,000.

Pertinent parts of the trust agreement provided as follows:

[The trustee was directed] To hold said shares and any other property which may be substituted therefor as principal of the trust, to receive the net income thereon, to accumulate said income, and to pay from principal or income as the said Trustee may in its uncontrolled discretion determine, in the following manner, to-wit:

At the time of making this agreement, Settlor desires to make provision to assist in the college education of his grand-nieces and grand-nephews, being the grandchildren of his brother. These children, now numbering twelve (12), are the children of Harry and Phyllis Edmiston, now living in Mansfield, Ohio; Richard and Nancy Nyrop, now residing in Karachi, Pakistan; David and Jan Davis, now living in Youngstown, Ohio; and Merrill and Margaret Davis, now living in Dayton, Ohio.

As any child of any of the four couples just mentioned enters college, the Trustee shall pay to or for the use of said child, in such amounts and to such person, including the college which such child may attend, as the Trustee in its uncontrolled discretion may determine, the sum of One Thousand Dollars ($1000.00) per year. In the exercise of such discretion, the Trustee may consult with, but is not to regard itself as bound by the advice of the parents of such child.

Such payments at the rate of One Thousand Dollars ($1000.00) per child per year shall be made as above indicated for a period not to exceed four years and shall not be made to or on account of any child who is not actually enrolled in and attending a college.

\*        \*        \*        \*        \*        \*        \*

Settlor contemplates that the payments herein directed will substantially exhaust both principal and income of the trust hereby created. If having made all the payments herein indicated to all the children of the four couples above mentioned, who attend college, there remains any balance in the fund, either of principal or accumulated income, the Trustee shall, when the last of such children reaches the age of twenty-one (21) years, pay the balance in such funds both of principal and accumulated income to the JASAM FOUNDATION, a corporation not for profit under the laws of the State of Ohio.

The Jasam Foundation, Inc., was exempt from Federal taxation under the provisions of section 501(c)(3). Samuel was president of

Jasam, which engaged primarily in activities of an educational nature. The foundation was originally established by the petitioners.

The trust agreement further provided that if in the discretion of the trustee the principal and income should appear insufficient to meet the contemplated payments the trustee was empowered to adjust the amount of the payments so that substantially proportionate payments could be made to all children. In addition the trustee was directed to "keep in touch" with the parents of the contemplated beneficiaries in order to determine when and to whom payments should be made.

At the time of the execution of the trust agreement Samuel had 12 grandnieces and grandnephews between the ages of 4 and 16 years.

To the date of trial $680 had been distributed by the trustee to Nyssa Edmiston, one of the petitioners' grandnieces, for tuition, room, board, and books at Bowling Green University.

As of February 13, 1969, the total assets of the above-described trust amounted to $122,257.74.

On their Federal gift tax returns for 1964 the petitioners claimed charitable deductions for the amount of the above-described corpus. In his notice of deficiency the respondent disallowed the petitioners' deductions pertaining to the above-described trust in toto.

## Issue 2

On or about December 26, 1964, Samuel delivered certain stock certificates to City National Bank in trust for the benefit of his five minor grandchildren: Christie R. Curie, age 4; Robert D. Curie, age 7; Jeffrey S. Guylas, age 6; Jody D. Guylas, age 2; and Samuel N. Davis, age 1 day. Each of these five trusts consisted of 300 shares of Corrugated having a value of $6,000 or $20 per share. On December 31, 1964, five stock certificates of 300 shares each were transferred on the stockholders' ledger of Corrugated to Strafe & Co., the nominee for securities held in trust by City National Bank. No written trust agreements were executed by Samuel prior to or at the time of delivery of the stock to City National Bank. Samuel made the decision to give gifts to his grandchildren late in 1964. There was insufficient time to draft the trust agreements and the petitioner was desirous of obtaining the annual exclusions from taxable gifts (under section 2503(b)) for 1964 so the certificates were delivered to the bank in December without written agreements. At the time of delivery the bank was advised that trust agreements would be prepared and delivered at a later date.

On June 1, 1965, Samuel executed five separate trust agreements (hereinafter referred to as the June agreements), identical but for the designations of the named beneficiaries. These agreements named City National Bank as trustee and referred to the stock transfer of December 26, 1964.

These agreements directed City National Bank to pay the net income to the named grandchild who was the beneficiary of the particular trust. Each agreement further provided:

The payment of net income to such beneficiary shall be effected by prompt distribution thereof to The Park National Bank of Newark, Ohio, in its capacity under a trust agreement between SETTLOR and The Park National Bank * * * effective December 26, 1964 * * *

The agreements provided that should the particular beneficiary die during the term of the trust the income was to be distributed to the beneficiary's parents or the survivor of them and, if the parents predeceased the beneficiary, to the beneficiary's brothers and sisters. If the beneficiary were not survived by his parents or siblings, the income was to be paid to Jasam.

Each agreement further provided that when the particular beneficiary attained the age of 25 the trust would terminate and the principal would be distributed to the beneficiary. Should the particular beneficiary have died during the term of the trust the principal would be distributed to whoever was then receiving the income. If the principal were to be distributed to the beneficiary's parents, it would be distributed when the youngest child became 25; if the principal were to be distributed to the beneficiary's brothers and sisters, the distribution would be made when the youngest of them reached 25. If the beneficiary were not survived by his parents or siblings, the principal would be distributed to Jasam.

The final, pertinent part of each agreement provided that the trusts were irrevocable and that the settlor had no power to alter them beyond the power to designate another trustee.

On July 23, 1965, Samuel executed five separate trust agreements (hereinafter referred to as the July agreements), which had been referred to in the June agreements. In the July agreements Samuel designated "The Park National Bank of Newark, Ohio" (hereinafter referred to as Park National Bank) as trustee of each of the five trusts. The beneficiaries of these trusts were the petitioners' grandchildren, as described above. All of the July agreements were identical except for the designations of the named beneficiaries.

The July agreements directed the trustee to receive the income as paid by the trustee of the trusts established by the June agreements. With regard to the disposition of these amounts the July agreements provided, in pertinent part, as follows:

(1) The TRUSTEE, in its sole discretion, authority and judgment may invest and reinvest the sums received by it as such TRUSTEE as it deems proper * * *.

(2) The TRUSTEE shall pay to or expend for the benefit of SETTLOR'S grandson * * * from time to time so much or all of the net income and the

principal of the trust estate as the TRUSTEE in its sole discretion determines to be necessary for the comfortable support, education, maintenance, medical care and welfare of such beneficiary, and no one may inquire into the exercise of the discretion of the TRUSTEE in this regard, its decision with respect thereto being final, binding and conclusive upon all persons whomsoever.

(3) When the beneficiary * * * shall attain the age of twenty-five (25) years, this trust shall terminate and as soon thereafter as is reasonably possible the TRUSTEE shall deliver the principal then in its hands to [named beneficiary], absolutely and in fee simple.

The July trusts further provided that if the particular beneficiary should die during the term of his trust, the trust was to terminate and the principal thereof was to be delivered by the trustee to Jasam. Finally, the trusts provided that the settlor was to have no power to revoke or alter, but that he retained the right to designate another trustee.

In June of 1966 a gift tax examiner from the Internal Revenue Service advised Samuel that the gifts in trust to his five grandchildren under the instruments dated June 1, 1965, did not constitute gifts of a present interest.

After Samuel was informed that it was the Internal Revenue Service's position that annual exclusions were unavailable to him or Jeanette with reference to the trusts for his grandchildren, he agreed on advice of counsel to execute 10 documents entitled "Correction of Trust Agreement."

Samuel executed these 10 instruments on July 28, 1966. All 10 of the instruments were identical except for the description each contained of the trust it purported to correct. Each instrument stated that a particular trust "is hereby corrected and reformed to conform to the original intent of Settlor." And further provided as follows:

Anything to the contrary in said original Trust Agreement notwithstanding, the property and the income therefrom of the trust may be expended by, or for the benefit of, the Donee before the Donee attains the age of 21 years and shall to the extent not so expended—(A) pass to the Donee on the Donee attaining the age of 21 years, and (B) in the event the Donee dies before attaining the age of 21 years, be payable to the estate of the Donee or as the Donee may appoint under a general power of appointment as defined in Section 2514(c) of the Internal Revenue Code.

Each of the 10 instruments was signed by the trustee of the particular trust involved, i.e., either City National Bank or Park National Bank, as well as by Samuel.

City National Bank, which at the time of trial was trustee of all 10 trusts (Park National Bank had been replaced by City National Bank by exercise of Samuel's retained right to substitute trustees), considered the purported correction to have controlling effect upon the administration of the trusts. The purported corrections required

no changes to be made in administration. In addition, at the time of trial no distribution from, or termination of, any of the trusts had occurred.

For the year 1964 the petitioners paid no gift tax allocable to the above-described transfers in trust by reason of their claim to annual exclusions totaling $30,000, the total principal amount that Samuel had placed in trust for his grandchildren.

In his notices of deficiency to both petitioners the respondent disallowed the petitioners' claimed annual exclusions in toto, stating, in part:

On December 26, 1964, you made gifts in trust to five minors and these gifts were formalized by trust instruments dated June 1, 1965 (Schedule A, Item C, Trusts for Minors). It is determined that the beneficiaries of these trusts did not receive an immediate, unrestricted right to the use, possession or enjoyment of all the income and corpus of the trusts, and, therefore, the gifts to the trusts are determined to be future interests in property and no exclusions are allowable for these gifts.

**OPINION**

*Issue 1*

Section 2522 provides, in pertinent part, as follows:

SEC. 2522. CHARITABLE AND SIMILAR GIFTS

(a) CITIZENS OR RESIDENTS.—In computing taxable gifts for the calendar year, there shall be allowed as a deduction in the case of a citizen or resident the amount of all gifts made during such year to or for the use of—

\*          \*          \*          \*          \*          \*          \*

(2) a corporation, or trust, or community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, \* \* \* no part of the net earnings of which inures to the benefit of any private shareholder or individual, \* \* \*

The question at issue here arises from the respondent's determination that a trust established by Samuel did not meet the language of paragraph (2).

The trust in question, of which substantial portions are set forth in our Findings of Fact, provided that the settlor desired "to make provision to assist in the college education of his grand-nieces and grand-nephews, being the grandchildren of his brother." The beneficiaries, although not named, were specifically described by the naming of their respective parents. The trust instrument, in addition, stated that at the time of its execution there were 12 such beneficiaries. The trustee was directed to pay out of income or principal, if necessary, a maximum of $1,000 per year for 4 years to each of the 12 children "actually enrolled in and attending a college." If the trustee anticipated that there would be insufficient amounts to make full payment

the trustee was directed to adjust the payments so that each beneficiary would receive his or her pro rata share. Any remainder of principal or accumulated income after the term of the trust, i.e., when the last of the beneficiaries reached 21 years of age, was to be distributed to Jasam, an organization concededly exempt from Federal taxation under section 501(c)(3) of the Code. The trust instrument further stated that the "Settlor contemplates that the payments herein directed will substantially exhaust both principal and income of the trust hereby created."

We have been, on several past occasions, faced with circumstances almost identical to those presented here and in those situations we have uniformly denied petitioners the deductions. In the instant case the petitioners do not offer justification for a deviation now.

*Estate of Philip Dorsey*, 19 T.C. 493 (1952), presented the factual situation most like the one at bar.[4] Dorsey established a trust, as we stated, "to provide scholarships at Western Maryland College * * * for any grandniece or grandnephew of the decedent who may desire a scholarship." *Estate of Philip Dorsey, supra* at 494–495. Substantially all of the remainder of the trust was to go to Western Maryland College. We found that the primary purpose of the trust was "to provide scholarships exclusively for the grandnieces and grandnephews" of the settlor. *Estate of Philip Dorsey, supra* at 499. We stated that such a purpose is not charitable in nature.

On brief the petitioners seek to distinguish *Dorsey* by referring to the fact that in *Dorsey* the decedent directed payment of certain other sums to other named individuals. However, these sums were not directly related to the purported educational purpose of the trust, whereas the beneficiaries of the scholarship fund were not identified by name any more than they were in the case at bar. The petitioners also seek to apply this distinction to our decision in *Amy Hutchison Orellin*, 46 B.T.A. 1152, 1153 (1942), which concerned the predecessor of section 2522, in which the trust in question provided:

EIGHTH: That this Trust Agreement has for its purpose the giving of assistance in the education of youth and in particular the giving of financial aid to persons of college age whose circumstances prohibit such advantages.

(A) That to this end the following persons shall first become eligible to receive financial aid and may apply for such aid * * * [*Amy Hutchison Orellin, supra* at 1153.]

Following this paragraph the trust instrument set out by name 14 grandnephews and grandnieces of the settlor. On these facts we held that the requisite charitable purpose was absent. The petitioners at-

---

[4] *Estate of Philip Dorsey*, 19 T.C. 493 (1952), concerned the predecessor of sec. 2055, I.R.C. 1954, the estate tax analog to sec. 2522. This, however, does not serve to distinguish *Dorsey* because par. (a)(2) of sec. 2522 is virtually identical to par. (a)(2) of sec. 2055.

424

tach a great deal of importance to the fact that the beneficiaries of the trust were specifically named while in the instant case they were not. We find this a distinction without a difference. If the instant trust provided a deduction it would be a simple matter for settlors to specifically identify familial beneficiaries without naming them. As in the instant case, beneficiaries would merely have to be identified by naming their parents. This would be a blatant glorification of form over substance.

We believe the within trust to be a private rather than a public educational charity. We have no doubt that the petitioners' primary purpose was to aid in the education of the natural objects of their bounty. This purpose, though laudatory, "is not the charitable purpose which permits a deduction for gift tax." *Amy Hutchison Crellin, supra* at 1156. As the Court of Appeals for the Sixth Circuit stated in *Griffin* v. *United States*, 400 F. 2d 612, 616 (C.A. 6, 1968), affirming 267 F. Supp. 142 (E. D. Ky. 1967):

> We believe that the trust provisions applicable to the grandchildren [5] constitute a private trust to which the testator intended to and did give absolute precedence. It does not resemble a public educational trust where some relatives may benefit because they are part of the general class, whether specifically preferred * * * or not * * * [Citations omitted.]

As the petitioners correctly point out on brief, "charity begins where certainty in beneficiaries ends." *S. E. Thomason*, 2 T.C. 441, 443 (1943). In situations in which a charitable trust merely states a preference for relatives of a settlor who are included along with an indeterminable class of beneficiaries, we have allowed a deduction. See, e.g., *Estate of Harley J. Davis*, 26 T.C. 549 (1956); *Estate of Annie Sells*, 10 T.C. 692 (1948). In the *Sells* case, upon which the petitioners rely heavily, the trust in question read, in pertinent part, as follows:

> I would like to set aside as an educational loan fund my Bank Stock * * * the dividend to be used to provide scholarship [sic] first to relatives or other Boys or girls. [*Estate of Annie Sells, supra* at 693.]

In holding for the petitioner, in *Sells* at page 699, we stated: "She merely indicated that a preference should be given to them [relatives] and did not confine her charity to such persons." In the instant case

---

5 The petitioners attempt to distinguish *Griffin* by reference to the court's statement at p. 616: "It is clear, of course, that a testator cannot set up a trust to provide educational scholarships for his *close* relatives and by so doing take advantage of an educational deduction under section 2055. * * * [Emphasis added.]" The petitioners contend that the word "close" does not refer to grandnieces and grandnephews. However, we note that the court cites as authority for the above language *Estate of Philip Dorsey*, 19 T.C. 493 (1952), and *Amy Hutchison Crellin*, 46 B.T.A. 1152 (1942), in which the beneficiaries in question were grandnieces and grandnephews of the respective petitioners. We, therefore, find the petitioners' distinction irrelevant and we find *Griffin* apposite.

it is our determination that at the time the trust was executed Samuel intended to confine his largess to his grandnieces and grandnephews, for the trust agreement, itself, stated that Samuel expected the corpus to be exhausted by payments to the individual beneficiaries. Although it was stipulated that Jasam was a charitable foundation, there was but a remote possibility at the time of the creation of the trust that it would receive income or principal from the trust.

In *Estate of Harley J. Davis, supra* at 552, upon which the petitioners also rely, we stated: "The trust was one for the benefit of a general class without personal specification or identification, none of whom were in any way related to or even known to the decedent." This language, alone, serves to render *Estate of Harley J. Davis* inapposite.

Section 2522(a)(2) states that a gift in trust, in order to be deductible, must be to a trust "operated exclusively" for charitable purposes. When there are two classes of beneficiaries, one noncharitable and one charitable, the effect of the word "exclusively" has been vitiated in certain circumstances. If an interest passes to charity on the date of the gift which may be defeated by the happening of some act or event "the occurrence of which appeared to have been highly improbable on the date of the gift, the deduction is allowable." Sec. 25.2522(a)–2(b), Gift Tax Regs. However, where, as in the instant case, "there is no assurance that the charity will receive the bequest or some determinable part of it," there can be no deduction. *Commissioner* v. *Sternberger's Estate*, 348 U.S. 187, 199 (1955); *Griffin* v. *United States, supra; Estate of Elizabeth Annis Hutchinson*, 51 T.C. 874 (1969); sec. 25.2522(a)–2(b), Gift Tax Regs. Although as we noted in our Findings of Fact the trust corpus did substantially appreciate in value, at the critical time of the gift there was every expectation that Jasam would ultimately receive nothing.

On brief the petitioners argue somewhat inversely that section 2522(c)[6] directs the application of section 503 to this case. The fallacy in this argument is that section 2522(c) provides additional grounds for the *disallowance* of a deduction if that deduction is "otherwise allowable" under section 2522. It is our holding herein that the petitioners have failed to meet section 2522(a)(2). Therefore, the deduction is not "otherwise allowable." Accordingly, we need not engage in consideration of section 2522(c).

---

[6] Sec. 2522(c), I.R.C. 1954, reads as follows:
SEC. 2522. CHARITABLE AND SIMILAR GIFTS.
   (c) DISALLOWANCE OF DEDUCTION IN CERTAIN CASES.—
      For disallowance of certain charitable, etc., deductions otherwise allowable under this section, see sections 503 and 681.

426

*Issue 2*

Section 2503(b) provides donors with exclusions from taxable gifts for gifts made during the calendar year. This exclusion is, however, not available for gifts of future interests in property.[7] Section 2503 (c) contains an exception to this rule for gifts to minors, providing certain conditions are met.[8]

The instant controversy concerning section 2503 arose in the following manner. Samuel, in December of 1964, delivered five stock certificates, each representing 300 shares of Corrugated, with a value of $20 per share to the City National Bank. No written instrument accompanied this transfer but the stock was to be held by the bank in trust for Samuel's grandchildren.

In June of 1965 Samuel executed five trust agreements which referred to the December 1964 transfer of stock to City National Bank. In essence, these trust agreements directed the payment of income to five additional trusts, the beneficiaries of which were to be the petitioners' grandchildren. In July of 1965 the petitioner executed five trust agreements concerning these intermediary trusts, naming Park National Bank as trustee.

In our Findings of Fact we have described both the June and July trust agreements in great detail. For purposes of our opinion and decision, however, it suffices to say that the parties herein agree that both the June and July trust agreements are violative of section 2503(c) and that the gifts in trust are of future interests in property.

In June of 1966 a gift tax examiner from the Internal Revenue Service advised Samuel that gifts under the June trust agreements constituted gifts of future interests and that the annual exclusions of section 2503(b) were unavailable. In consequence of this and on advice of counsel, on July 28, 1966, Samuel executed 10 documents

---

[7] Sec. 2503(b), I.R.C. 1954, provides, in part, as follows:
SEC. 2503. TAXABLE GIFTS.

(b) EXCLUSIONS FROM GIFTS.—In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year * * * the first $3,000 of such gifts to such person shall not * * * be included in the total amount of gifts made during such year. * * *

[8] Sec. 2503(c), I.R.C. 1954, provides as follows:
SEC. 2503. TAXABLE GIFTS.

(c) TRANSFER FOR THE BENEFIT OF MINOR.—No part of a gift to an individual who has not attained the age of 21 years on the date of such transfer shall be considered a gift of a future interest in property for purposes of subsection (b) if the property and the income therefrom—

(1) may be expended by, or for the benefit of, the donee before his attaining the age of 21 years, and

(2) will to the extent not so expended—

(A) pass to the donee on his attaining the age of 21 years, and

(B) in the event the donee dies before attaining the age of 21 years, be payable to the estate of the donee or as he may appoint under a general power of appointment as defined in section 2514(c).

entitled "Correction of Trust Agreement," 1 to amend each of the 10 trusts hereinabove described. Each of these correction agreements stated that the trust it referred to "is hereby corrected and reformed to conform to the original intent of the Settlor." Each agreement then recited essentially the provisions contained in paragraphs (1) and (2) of section 2503(c) in an obvious effort to conform to the eligibility requirements for the annual gift tax exclusion.

Based on the above facts the petitioners advance two arguments in favor of allowance of annual exclusions. Firstly, that the June and July trust agreements of 1965 should be disregarded and the question of whether the petitioners gave present interests should be determined upon the objective facts surrounding the 1964 transfers alone. Secondly, if the trust agreements of 1965 are given retroactive effect then the reformations executed in 1966 should also relate back to the time of the gifts. We cannot agree with either of these contentions.[9]

Concerning their first argument, the petitioners contend that we should be governed by "the objective facts of the transfers and the circumstances under which they were made." These objective facts may be cited as the physical delivery in December 1964 by the donor of the stock certificates to the corporate trustee (who was also the transfer agent) and the transfer of said certificates into the street name used by the trustee, the $6,000 value of each of the gifts,[10] indicating the petitioners' intent to avail themselves of their annual exclusions, and the absence of restriction on the trustee, indicating a present interest. The petitioners further argue that since the agreements of 1965 were not in existence as of the time of the gifts they are not an objective fact to be considered. We are of the opinion that the written agreements were intended, by Samuel, to be written memorials of his oral agreement with the bank. In fact, Samuel testified that the bank was advised, upon receiving the stock certificates in late December 1964, that trust agreements would be prepared and delivered at a later date. Hence, the agreements themselves make reference to the 1964 transfers and as such are the best manifestation of the objective facts surrounding the making of the gifts.

Further, we find it difficult to conceive that Samuel would place $30,000, albeit in trust, in the hands of City National Bank without restriction as to its disposition. If this is the petitioners' contention, we do not find sufficient evidence in the record to convince us of its probative value. Rather, we believe that the agreements executed in

---

[9] We note here that the respondent contends that if even we were to give the 1966 agreements retroactive effect the provisions of sec. 2503(c) would nonetheless be violated due to the trustee's broad powers over the trusts' property. Our holding renders consideration of this point unnecessary.

[10] Under secs. 2503(b) and 2513, $6,000 represents the maximum annual exclusion available to the petitioners by virtue of gift splitting.

June of 1965 were merely the physical statement of the facts as they existed in December of 1964. The trust agreements executed in 1965 are, therefore, not being applied retroactively.

In view of the provisions clearly set forth in the written trust agreements this case is distinguishable from *Morris M. Messings*, 48 T.C. 502, 512 (1967). In *Messing* no formal trusts were ever created. In addition, our decision in *Morris M. Messing, supra* at 515, concerning issue 3, indicates that we are not disposed "to rewrite the clear language of a trust instrument" where such instrument exists as it does here.

In support of their argument that the 1966 reformation agreements should be given retroactive effect, the petitioners contend that the agreements were effective under Ohio law [11] and that the purported reformations did not disturb the rights of the beneficiaries, none of whom had become 21. From this the petitioners seem to deduce the thesis that since the reformations were effective under State law and since no one's rights were prejudiced thereby, the petitioners should be permitted their annual exclusions. Even accepting, *arguendo*, the petitioners' premises, we are not persuaded by this reasoning.

Assuming the purported reformations to be valid under the law of Ohio, there is ample authority that "not even judicial reformation can operate to change the federal tax consequences of a completed transaction." *Van Den Wymelenberg* v. *United States*, 397 F. 2d 443, 445 (C.A. 7, 1968), affirming 272 F. Supp. 571 (E.D. Wis. 1967); *Emerson Institute* v. *United States*, 356 F. 2d 824 (C.A. D.C. 1966), affirming an unreported case; *Piel* v. *Commissioner*, 340 F. 2d 887, 891 (C.A. 2, 1965), affirming a Memorandum Opinion of this Court; *M.T. Straight's Trust* v. *Commissioner*, 245 F. 2d 327, 329 (C.A. 8, 1957), affirming 24 T.C. 69 (1955). Cf. *Shields* v. *United States*, 375 F. 2d 457, 460 (C.A. 6, 1967), affirming 265 F. Supp. 770 (N.D. Ohio 1965). But see *Flitcroft* v. *Commissioner*, 328 F. 2d 449, 455 (C.A. 9, 1964), reversing and remanding 39 T.C. 52 (1962).

Sentiments in which we concur concerning *nunc pro tunc* reformations, executed solely in order to alter tax consequences were expressed by the Court of Appeals in *Van Den Wymelenberg* v. *United States*, *supra* at 445:

As to the parties to the reformed instrument the reformation relates back to the date of the original instrument, but it does not affect the rights acquired by non-parties, including the Government. Were the law otherwise there would exist considerable opportunity for "collusive" state court actions having the sole purpose of reducing federal tax liabilities. Furthermore, federal tax liabilities would remain unsettled for years after their assessment if state courts and

[11] This, despite the fact that the original trust agreements purported to be not subject to amendment.

private persons were empowered to retroactively affect the tax consequences of completed transactions and completed tax years.

With the above rationale in mind it is our holding that the 1964 gifts in trust made by Samuel were of future interests in property and not within the safe harbor of section 2503(c). As such the respondent was correct in his disallowance of the petitioners' annual exclusions with respect to these gifts.

In order to reflect our holdings as to issues 1 and 2, and to provide the requisite adjustment of the petitioners' taxable gifts for 1965,

*Decisions will be entered for the respondent.*